**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DEBORAH OWENS,**

                                                    **Plaintiff,**

          **vs.**                                                          **5:06-CV-0736**
                                                                                    **(NAM/GHL)**

**MICHAEL J. ASTRUE*,**
**COMMISSIONER OF SOCIAL SECURITY,**

                                                    **Defendant.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

Bond and Mcdonald, P.C.                          Mark M. McDonald, Esq.
91 Genesee Street
Geneva, New York 14456
*Attorneys for Plaintiff*

Andrew T. Baxter                                 Margaret A. Donaghy, Esq.
United States Attorney                           Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
*Attorney for Defendant*

          ** On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of the Social
          Security Administration.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is
          automatically substituted for former Commissioner Joanne B. Barnhart as the defendant in
          this action.

**Norman A. Mordue, Chief U.S. District Judge:**

                    **MEMORANDUM-DECISION AND ORDER**

**I.        INTRODUCTION**

          Plaintiff Deborah M. Owens brings the above-captioned action pursuant to 42 U.S.C. §

405(g) of the Social Security Act, seeking a review of the Commissioner of Social Security's

decision to deny her application for disability benefits.

## II.    BACKGROUND

On May 27, 2003[1], plaintiff filed an application for Disability Insurance Benefits ("DIB"). (Administrative Transcript at p. 63-64).[2]   Plaintiff was 45 years old at the time of her application and alleged an inability to work due to a neck injury, limited use of her arms and shoulders, headaches, backaches, numbness, dizziness and chronic obstructive pulmonary disease.  (T. 71). Plaintiff previously worked as a waitress, cleaner and home health aide.  (T. 16, 74).

On August 18, 2003, plaintiff's application was denied and plaintiff requested a hearing by an ALJ which was held on August 17, 2005.  (T. 26, 449).   On January 13, 2006, the ALJ issued a decision denying plaintiff's claim for disability benefits.  (T. 12-18).  The Appeals Council denied plaintiff's request for review on May 13, 2006, making the ALJ's decision the final determination of the Commissioner. (T. 4).  This action followed.

## III.    DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities."  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  There is a five-step analysis for evaluating disability claims:

"In essence, if the Commissioner determines (1) that the claimant is not

---

[1] In the Decision, the ALJ stated that plaintiff filed an application for benefits on May 27, 2003. (T. 12). Plaintiff's Memorandum of Law contains the same date for the filing of the application and cites to pages 63-64 of the Administrative Transcript.  However, those pages of the transcript and other documents reference the date of filing as June 4, 2003. (T. 25, 63-64).  Defendant does not address the discrepancy.

[2] "(T. )" refers to pages of the administrative transcript, Dkt. No. 2.

working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

On January 13, 2006, the ALJ noted, for the purposes of determining whether or not plaintiff was entitled to DIB, that the date plaintiff was last insured for disability benefits was December 31, 2001.[3] (T. 12). The ALJ found at step one that plaintiff has not engaged in substantial gainful activity at any time relevant to the decision. (T. 14). At step two, the ALJ concluded that plaintiff suffered from chronic obstructive pulmonary disease and status post cervical fusion which qualified as a "severe impairments" within the meaning of the Social Security Regulations (the "Regulations"). (T. 14). At the third step of the analysis, the ALJ

---

[3] Based upon plaintiff's application, the pertinent period in question is from May 1, 2000 until December 31, 2001. Plaintiff has not challenged these dates as the proper period of coverage. *See Sokol v. Astrue*, 2008 WL 4899545, at *5 (S.D.N.Y. 2008).

determined that plaintiff's impairments did not meet or equal the severity of any impairment

listed in Appendix 1 of the Regulations.  (T. 15).  The ALJ found that plaintiff had the residual

functional capacity ("RFC") to perform light work and stated that plaintiff was, "able to lift/carry

up to 20 pounds occasionally and 10 pounds frequently, stand/walk at least 6 hours in an 8 hour

work day and sit for 6 hours in an 8 hour work day, as well as with the need to work only in a

clean atmosphere".  (T. 16).  Therefore, at step four, the ALJ concluded that plaintiff was unable

to perform all of her past relevant work. (T. 16).  The ALJ obtained the testimony of a vocational

expert to determine whether there were jobs plaintiff could perform.  Based upon the vocational

expert's testimony, the ALJ concluded at step five, that there were jobs existing in significant

numbers in the national economy that plaintiff could perform such as work as an office clerk and

assembler.  (T. 17).  Therefore, the ALJ concluded that plaintiff was not under a disability as

defined by the Social Security Act.  (T. 18).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that:

(1) the ALJ failed to properly apply the treating physician rule; (2) the ALJ failed to properly

assess plaintiff's credibility; (3)  the RFC determination by the ALJ is not supported by

substantial evidence; and (4) the ALJ relied upon the vocational expert's response to a defective

hypothetical and thus, the Commissioner did not sustain his burden of proof at step five of the

sequential evaluation process. Plaintiff requests a remand solely for the calculation of benefits.

(Dkt. No. 4).

**A.      Treating Physician Rule**

Plaintiff alleges that the ALJ improperly rejected the opinions of plaintiff's treating

neurologist, Jody Stackman, M.D.  Plaintiff argues that Dr. Stackman's opinions are consistent

with his prior examinations, clinical findings, objective evidence and supported by the record as a whole.  The Commissioner contends that Dr. Stackman's opinions are not consistent with his objective findings and further, that the opinions are retrospective and inconsistent with other substantial and contemporaneous evidence in the record.

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78-79; *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2).  The less consistent an opinion is with the record as a whole, the less weight it is to be given.  *Stevens v. Barnhart*, 473 F.Supp.2d 357, 362 (N.D.N.Y. 2007); *see also Otts v. Comm'r of Social Sec.*, 249 Fed.Appx. 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").  An ALJ may refuse to consider the treating physician's opinion controlling if he is able to set forth good reason for doing so.  *Barnett v. Apfel*, 13 F. Supp.2d 312, 316 (N.D.N.Y. 1998).   When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

> (I) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2).

The opinion of the treating physician is not afforded controlling weight where the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Filoramo v. Apfel*, 1999 WL 1011942, at *7 (E.D.N.Y. 1999) (holding that the ALJ properly discounted the assessment of a treating physician as it was inconsistent with opinions of other treating and consulting physicians). Such a conclusion provides a proper basis under SSR 96-2p for rejecting a treating physician's conclusion. *Taylor v. Astrue*, 2008 WL 3884356, at *11 (N.D.N.Y. 2008). Further, an opinion that is not based on clinical findings will not be accorded as much weight as an opinion that is well-supported. 20 C.F.R. §§ 404.1527(d)(3), 416.927 (d)(3); *see also Stevens*, 473 F.Supp.2d at 362.

In the Second Circuit, a treating physician's retrospective opinion is entitled to controlling weight unless it is contradicted by other medical evidence or "overwhelmingly compelling" non-medical evidence. *Rivera v. Sullivan*, 923 F.2d 964, 968-69 (2d Cir. 1991); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 862 (2d Cir.1991). If the opinion is inconsistent with other medical evidence in the record, the ALJ is not compelled to assign controlling weight. *Buske v. Astrue*, 2009 WL 211560, at *9 (N.D.N.Y. 2009) (citing *Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981)). A retrospective opinion must be supported by medical evidence and is only entitled to the deferential treating physician standard by the Administrative Law Judge when there exists such medical evidence supporting the retrospective opinion. *Sokol*, 2008 WL 4899545, at *16.

On August 26, 2005, Dr. Stackman completed a Cervical and Lumbar Spine Residual

Functional Capacity Questionnaire.  (T. 429).  Dr. Stackman opined that plaintiff could occasionally lift/carry 10 pounds, rarely lift/carry 20 pounds, occasionally stand and walk, frequently sit, never climb ladders, rarely twist, stoop or crouch and occasionally climb stairs. (T. 432).  Dr. Stackman stated that, "Ms. Owens' disability began at the time of the motor vehicle accident in May 2000 and has continued through the present".  (T. 434).

The ALJ discussed Dr. Stackman's opinion and stated that, "these opinions are not supported by Dr. Stackman's own clinical findings as well as other objective evidence of record". (T. 16).   The ALJ cited to treatment records from Dr. Jeffrey A. Winfield (plaintiff's treating neurosurgeon) and noted that plaintiff, "has been consistently neurologically intact" and her "gait is normal". (T. 16).

As previously discussed, the relevant period of disability is from May 1, 2000 until December 31, 2001.  During that period, plaintiff had six visits with Dr. Stackman.  (T. 136-145).  Plaintiff was initially examined by Dr. Stackman on May 17, 2000 at the request of her orthopedist, Bruce Greene, M.D. (T. 138).   Dr. Stackman noted that plaintiff presented an "essentially normal neurological exam, in specific because there is no reflex diminution, weakness, nor sensory changes on the right upper extremity".  (T. 139).  During a follow up examination one week later, plaintiff made no complaints to Dr. Stackman regarding her neck or spine. (T. 144).   On June 19, 2000, Dr. Stackman noted that plaintiff exhibited normal muscle testing, reflexes, station and gait and diagnosed plaintiff with cervical syndrome and possible radiculopathy.  (T. 143).   Moreover, Dr. Stackman's notes indicate that plaintiff had no motor deficit, no sensory changes and no reflex changes. (T. 143).  Dr. Stackman prescribed physical therapy and stated, "I don't know that we need to get an MRI study of her cervical spine just

now" but scheduled the MRI for the future if plaintiff did not improve. (T. 143). On July 21, 2000, Dr. Stackman examined plaintiff and found a restricted range of cervical movement but also noted that plaintiff exhibited normal strength, reflexes and tone. (T. 142).  Dr. Stackman's diagnosis was unchanged however, he concluded that, "an MRI study of her neck is clearly indicated".[4] (T. 142).  On August 31, 2000, Dr. Stackman asked Dr. Kennedy Yalamanchili to examine plaintiff.[5] (T. 141).  Dr. Stackman advised that plaintiff, "has a large C5-6 herniated disc which on MRI study seems to somewhat compress the spinal cord, although she does not have any spinal cord symptoms or signs". (T. 141).

Plaintiff's next visit with Dr. Stackman was nearly 9 months later in April 2001. (T. 137). Dr. Stackman noted that plaintiff's cervical range of motion was restricted but her sensory examination was intact, strength was normal and no atrophy was present. (T. 137).  Dr. Stackman reviewed a "repeat MRI" and noted, "no clear evidence of any spinal stenosis or disc herniation" but observed some mild narrowing of the nerve roots.[6] (T. 137).  On June 13, 2001, plaintiff's last visit with Dr. Stackman during the relevant period, Dr. Stackman noted a restricted range of motion with "excellent appendicular strength on both upper extremities and distally on the lower extremities", no sensory deficit and normal station/gait. (T. 136).  Dr. Stackman diagnosed plaintiff with cervical syndrome. (T. 136).  During the course of plaintiff's treatment for the relevant period, Dr. Stackman's treatment records are devoid of any opinion with regard to

---

[4] The record does not contain a copy of the MRI report.

[5] The record does not reflect Dr. Yalamanchili's area of medical expertise or any treatment records.

[6] The record does not contain a copy of the second MRI report.

plaintiff's functional limitations.[7]

Based upon review of the record, the Court finds that Dr. Stackman's treatment notes provide no medical support for the opinions he expressed in August 2005.  Dr. Stackman's opinion is broad - to wit, the doctor claims plaintiff has been disabled from May 2000 to present.  The record contains notes for treatment that Dr. Stackman provided in 2002, 2003, 2004 and 2005 and although those records **may** provide support for Dr. Stackman's opinions regarding plaintiff's **current** functional limitations, that analysis is beyond the scope of this Court's review.  The relevant period for the purposes of this action is May 2000 until December 2001.  For that span, Dr. Stackman's August 2005 assessment regarding plaintiff's limitations do not comport with his records or clinical data.

Moreover, upon review of the entire record, the Court finds that Dr. Stackman's opinions are inconsistent with the treatment records of plaintiff's other treating physicians.  In October 2000, plaintiff underwent an Anterior Cervical Discectomy and Interbody Fusion at the C5-6 level performed by Dr. Winfield.[8]  (T. 290).  On November 19, 2001, Dr. Winfield examined plaintiff and opined:

> . . . this patient has an essentially normal neurological exam.  She still
> complains of axial pain and myofascial symptoms.  I believe she

---

[7] In July 2000, September 2000 and August 2001, Dr. Stackman specifically opined that plaintiff was "totally disabled from her work duties". (T. 424-426).   The ALJ was not compelled to accept those opinions.  The final question of disability is expressly reserved to the Commissioner. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d. Cir. 1999); 20 C.F.R. § 404.1527(e)(1).   "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions." *Snell*, 177 F.3d at 133.  Thus, a treating physician's disability assessment is not determinative. *Id.*; *Murphy v. Barnhart*, 2003 WL 470572, at *7 (S.D.N.Y. 2003) (the ALJ is not required to give controlling weight to a treating physician's opinions as to the ultimate issue of whether the claimant meets the statutory definition of disability).

[8] The record does not contain any treatment notes or surgical records from Dr. Winfield for October 2000. Plaintiff claims she had one follow up visit with Dr. Winfield after her October 2000 surgery.  The record suggests that the follow up examination was in December 2000.  However the record does not contain any notations from that visit.

would benefit from return to the use of an SSRI.[9]  At prior visits, she
had been on Wellbutrin.[10]  Based on the clinical symptomatology and
absence of findings on a neurological exam I see no indication to
repeat MRI.  EMG and nerve conduction studies could be performed.
I would suspect that these would be unremarkable.  At the present time
I have nothing to suggest for this patient in the way of changing her
current, what I consider to be minor postoperative symptoms.  (T.
291).

Dr. Greene, plaintiff's orthopedist, examined plaintiff in May 2000 and June 2000 and
diagnosed plaintiff with "cervical spine strain".  (T. 258).  On October 25, 2001, plaintiff was
examined by Stephen Meyer, D.O. at the Ithaca Center for Pain Management.[11]  Dr. Meyer noted
that plaintiff exhibited significantly limited cervical range of motion but ambulated without
significant difficulty, had good motor strength and no sensory abnormalities.  (T. 373). Dr. Meyer
diagnosed plaintiff with cervicogenic pain with some radicular features. (T. 373).

The reports from plaintiff's other treating physicians contain contemporaneous findings
that contradict Dr. Stackman's assessment.  As such, the ALJ was not compelled to assign Dr.
Stackman's retrospective opinion the deference due to a treating physician's opinion.  *See Garner
v. Astrue*, 2009 WL 1911744, at *1 (S.D.N.Y. 2009).

Finally, Dr. Stackman's assessments are contradicted by plaintiff's own account of her
daily activities.  During the administrative hearing, plaintiff testified that she cooked, shopped for
food without assistance, washed dishes, vacuumed and mopped floors, washed clothes and was
able to attend to her own personal care.  (T. 463-464).  Plaintiff also testified that after her
surgery, her primary responsibility was caring for her 4-year old son who was "very active".  (T.

[9] SSRI is an abbreviation for selective serotonin reuptake inhibitor. *Dorland's Illustrated Medical
Dictionary*, 1784 (31st ed. 2007).

[10] Wellbutrin is used as an antidepressant. *Dorland's* at 265, 2107.

[11] Plaintiff's subsequent visits with Dr. Meyer were after the relevant period.

466).  Plaintiff also testified that from April 2005 to June 2005, she walked 2 ½ miles each day.[12] (T. 470).  *See Cruz v. Barnhart*, 2006 WL 1228581, at *13 (S.D.N.Y. 2006) (holding that a finding of incapacity was inconsistent with the plaintiff's own conduct); *see also Coyle v. Apfel*, 66 F.Supp.2d 368, 377-378 (N.D.N.Y. 1999) (holding that ALJ properly refused to afford controlling weight to treating physicians opinion that was inconsistent with the medical evidence and the evidence of plaintiff's daily activities).

Based upon a review of the record, the Court finds that the ALJ afforded the appropriate weight to Dr. Stackman's opinions.  The Court notes that the ALJ did not specifically assign weight to Dr. Stackman's opinions.  However, plaintiff does not object to that portion of the decision.  Further, the mere fact that the ALJ did not specifically state the weight afforded to Dr. Stackman's opinion does not mean that the opinion was not properly considered.  *See Marine v. Barnhart*, 2003 WL 22434094, at *3 (S.D.N.Y. 2003) (holding that the ALJ's failure to comment on weight afforded to opinions was not improper as decision indicates that his findings were made "[a]fter consideration of the entire record.").  While the ALJ could have provided a more detailed explanation for the weight given to Dr. Stackman's opinion, given the lack of evidence supporting the opinion, the ALJ's assessment was proper. *See Johnson v. Astrue*, 2008 WL 141115, at *7 (W.D.N.Y. 2008) (citing *O'Connor v. Chater*, 1998 WL 695418, at *1-2 (2d Cir. 1998)).  In rejecting a claim of disability, an ALJ is not required to reconcile explicitly every conflicting shred of medical testimony.  *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981).  The ALJ considered the regulations in refusing to give controlling weight to Dr. Stackman's opinion regarding plaintiff's functional limitations. *See Hogue v. Barnhart*, 2005 WL 1036336, at *13-14

---

[12] Plaintiff stated that she was able to do these activities "after the surgery". (T. 463).  As noted previously, the surgery took place in October 2000.

(S.D.N.Y. 2005).  This Court finds substantial evidence to support the ALJ's determination that Dr. Stackman's opinions regarding plaintiff's functional limitations are inconsistent with the evidence in the record.

**B.    Credibility**

Plaintiff contends that the ALJ improperly assessed her credibility as the reasons for finding plaintiff "not entirely credible" are unclear and "mixed in with his reasons for rejecting the treating physician's opinion".   Defendant argues that the medical evidence and plaintiff's stated activities do not indicate that plaintiff was precluded from all work prior to December 31, 2001.

The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Snell*, 177 F.3d at 135 (holding that an ALJ is in a better position to decide credibility).  If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(I)-(vi), 416.929(c)(3)(I)-(vi).  The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence.  *See* SSR 96-7p, 1996 WL 374186, at *2 (SSA 1996).  One strong indication of credibility of an individual's statements is their

consistency, both internally and with other information in the case record.  SSR 96-7p, 1996 WL

274186, at *5 (SSA 1996).

After considering plaintiff's subjective testimony, the objective medical evidence, and any

other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.

*Martone v. Apfel*, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999); *see also* 20 C.F.R. §§ 404.1529(c)(4),

416.929(c)(4).  An ALJ rejecting subjective testimony must do so explicitly and with specificity

to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and

whether his decision is supported by substantial evidence.  *Melchior v. Apfel*, 15 F.Supp.2d 215,

219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F.Supp 604, 608 (S.D.N.Y. 1987))

(citations omitted).

In this case, the ALJ determined that:

> the claimant's medically determinable impairments could have been
> reasonably expected to produce the alleged symptoms.  However,
> claimant's statements concerning the intensity, duration and limiting
> effects of these symptoms are not entirely credible. (T. 16).

Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ

did not apply the correct legal standard in assessing plaintiff's credibility.  The ALJ was required

to consider the factors enumerated in 20 C.F.R. § 404.1529(c)(3)(I)-(iv).  In the decision, the ALJ

summarized plaintiff's hearing testimony concerning her complaints of pain.  However, the ALJ

did not discuss, summarize or even address plaintiff's daily activities, medications or any of the

other listed factors.  The ALJ's decision is devoid of any explanation for the credibility

determination.  Based upon the lack of analysis, the Court is constrained to conclude that the ALJ

even considered the listed factors.

Defendant provides only a cursory argument in support of the ALJ's credibility analysis.

Defendant claims that the ALJ "considered plaintiff's testimony and her daily activities", however defendant does not cite to any portion of the ALJ's decision to support that claim.  While it is true that plaintiff provided explicit testimony regarding her extensive activities, the ALJ did not provide the proper analysis of those activities as required by the Regulations.  Consequently, the Court is left with no basis upon which to determine whether the appropriate legal standards were applied, nor can it evaluate whether the ALJ considered the entire evidentiary record in arriving at his conclusion. *See Harrison v. Sec'y of Health and Human Servs.*, 901 F. Supp. 749, 757 (S.D.N.Y. 1995).  As a result, the Court remands this case for a determination of plaintiff's credibility which must contain specific findings based upon substantial evidence in a manner that enables effective review.

## C.    Residual Functional Capacity

Residual functional capacity is:

> "what an individual can still do despite his or her limitations . . . .  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)).  In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis.  20 C.F.R. § 404.1545(a).

14

As discussed, the ALJ failed to properly assess plaintiff's credibility pursuant to the Regulations.  Consequently, the Court finds that the RFC assessment is not supported by substantial evidence.  Remand is appropriate in instances, such as this, when the reviewing court is "unable to fathom the ALJ's rationale in relation to the evidence in the record" without "further findings or clearer explanation for the decision."  *Williams v. Callahan*, 30 F.Supp.2d 588, 594 (E.D.N.Y. 1998) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).

**D.      Vocational Expert**

Plaintiff argues that as the ALJ improperly rejected the opinions of the treating physician, the ALJ presented a flawed hypothetical to the vocational expert.  A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony.  *Bosmond v. Apfel*, 1998 WL 851508, at *8 (S.D.N.Y. 1998) (citation omitted); *see also De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984).  If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability.  *Melligan v. Chater*, 1996 WL 1015417, at *8 (W.D.N.Y. 1996).  The "[p]roper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform."  *Lugo v. Chater*, 932 F.Supp. 497, 503 (S.D.N.Y. 1996).  Further, there must be "substantial evidence to support the assumption upon which the vocational expert based his opinion."  *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983).

In this case, the ALJ concluded that plaintiff had the residual functional capacity to perform light work. (T. 16). The ALJ enlisted the services of a vocational expert to determine whether there were any jobs existing in substantial numbers that a person with plaintiff's vocational and educational background could perform. The ALJ asked the expert the following questions:

> ALJ:  We're dealing at all times with a younger individual, a tenth grade education, and - - prior work that you've just described. If you took, first of all, the testimony as it was presented today of the symptomology after the surgery with the headaches and the neck pain - - the difficulty with the range of motion in the neck, the arm pain, the arm numbness - - would any jobs be maintained?[13]
>
> VE:  No, Your Honor.
>
> ALJ:  Let me change it a bit. If the overall physical capability with the same vocational profile was sedentary, of course, I take it none of the prior [jobs] would could be done.
>
> VE:  That's correct.
>
> ALJ:  Would any other jobs be maintainable based on that?
>
> VE:  Full range of sedentary?
>
> ALJ:  Sedentary. By the way, I'm going to add a clean atmosphere to that. (T. 475-476).

In response to this inquiry, the vocational expert testified that plaintiff could perform the job of an order clerk or telemarketer. (T. 476). The ALJ presented a second hypothetical but stated that the "RFC was light". (T. 477). In response, the vocational expert identified jobs of office clerk and assembler. (T. 477).

---

[13] The ALJ advised the vocational expert that plaintiff was previously employed as a waitress and housecleaner. (T. 475).

In this matter, the ALJ properly sought the testimony of a vocational expert.  Based upon the record, the Court finds that the hypotheticals posed to the expert were improper, but not for the reasons set forth by plaintiff.  As discussed above, the ALJ improperly assessed plaintiff's credibility, thus the RFC is unsupported by substantial evidence.  As a result, the ALJ relied upon an inadequate hypothetical proposed to the vocational expert to support a conclusion of no disability.  *See Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 57 (W.D.N.Y. 2002).

Even assuming the RFC analysis was proper, the hypotheticals posed to the expert were vague and did not contain a complete description of plaintiff's functional limitations.  *See Aull v. Astrue*, 2008 WL 2705520, at *17 (N.D.N.Y. 2008) (the ALJ did not clearly describe the parameters of plaintiff's functional capacities).  The RFC findings contained in the decision must match the hypothetical posed to the expert.  *See Hill v. Astrue*, 2007 WL 4741371, at *6, n. 4 (D.Kan.2007) (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991)); *see also Gulo v. Barnhart*, 2002 WL 1880705, at *11 (N.D.Ill.2002) (remanded by Seventh Circuit for further consideration because the RFC listed by the ALJ did not match the hypothetical posed to the vocational expert).  Therefore, on remand, any hypothetical questions posed to a vocational expert and relied upon by the ALJ should incorporate a proper RFC finding supported by substantial evidence.

## E.      Remand or Reversal

Plaintiff contends that the Commissioner's decision should be reversed rather than remanded because the record does not contain any medical opinion to dispute Dr. Stackman's opinions.  The Court disagrees.

The court has the power to affirm, modify, or reverse the decision of the Commissioner upon the pleadings and transcript of the record, "with or without remanding the cause for a rehearing ".  42 U.S.C. § 405(g); *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004).  Reversal for payment of benefits is appropriate "[w]here the existing record contains persuasive proof of disability and a remand for further proceedings would serve no further purpose".  *Martinez v. Barnhart*, 262 F.Supp.2d 40, 49 (W.D.N.Y. 2003) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  The Second Circuit has held that "where application of the correct legal principles . . . could lead to only one conclusion, there is no need to require agency reconsideration."  *Matovic v. Chater*, 1996 WL 11791, at *6 (S.D.N.Y. 1996) (quoting *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

In the case at hand, the ALJ's credibility analysis was improper.  However, this conclusion does not entitle plaintiff to an outright reversal for calculation of benefits.  Upon further review, the ALJ may still determine that plaintiff is not entirely credible.  It is for the ALJ, on remand, to re-weigh plaintiff's credibility and assess all of the factors in 20 C.F.R. § 404.1529(c)(3).  The ALJ must then reassess plaintiff's RFC and properly analyze step five.  If a vocational expert is called to testify, the ALJ must present hypothetical questions that accurately state plaintiff's RFC and limitations.  The determinations needed at steps four and five cannot be made by this Court, given its limited jurisdiction under 42 U.S.C. § 405(g).  *See Dioguardi v. Comm. of Social Sec.*, 445 F.Supp.2d 288, 300 (W.D.N.Y. 2006).

## IV.    CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with the above; and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Date:  November 3, 2009

Norman A. Mordue
Chief United States District Court Judge